UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHESAPEAKE EXPLORATION, L.L.C., § | |
|     *Plaintiff*, § | |
| § | |
| v. § | |
| § | |
| VALENCE OPERATING COMPANY, § | |
|     *Defendant/Third-Party Plaintiff*, § | CIVIL ACTION H-07-2565 |
| § | |
| v. § | |
| § | |
| CONOCOPHILLIPS COMPANY, § | |
|     *Third-Party Defendant.* § | |

**ORDER**

Pending before the court is defendant/third-party plaintiff Valence Operating Company's ("Valence") Motion for Partial Summary Judgment. Dkt. 37. Upon consideration of the motion, the responses, the record, and the applicable law, the motion is DENIED.

**BACKGROUND**

On October 15, 1975, a predecessor-in-interest to third-party defendant ConocoPhillips ("CP") signed a Joint Operating Agreement ("1975 JOA") covering depths below 8,915 feet for over 7,000 acres in Victoria County, Texas. Dkt. 33, Ex. 4. The Assignment and Bill of Sale was not recorded in the Deed Records of Victoria County, Texas. The plat attached to the 1975 JOA designated the properties subject to the agreement, including the property at issue—Section 10, Indianola R.R. Co. Survey A-440[1] ("A-440").

On December 27, 1991, CP conveyed a series of properties to Valence via an Assignment and Bill of Sale ("1991 Assignment"). Dkt. 33, Ex. 3. The 1991 Assignment had five exhibits, A

---

[1] The land is also called "Stayton Survey A-440" in the correspondence among the parties.

though E, listing the properties and agreements affecting those properties conveyed. Exhibit B was configured as follows:

Exhibit "B"

Lease and Contract Schedule to Assignment and Bill of Sale, Dated Effective October 1, 1991

Between Conoco Inc. and Valence Operating Company, County of Victoria, State of Texas

All Conoco's right, title and interest in the lease within the boundaries of the E. L. McCollum Gas Unit, as to all depths, whether or not all leases are described herein in this Exhibit "B". Said Unit Designation dated December 1, 1975 filed in Volume 892, Page 498 of the Deed Records of Victoria County, Texas including any amendments thereto.

| Conoco Lease Number | Lessor | Lessee | Date | Description | Recorded | |
|---|---|---|---|---|---|---|
| | | | | | Book | Page |
| C-19082<br><br>Subject to the following: | | | | All of the interest of Conoco Inc. in that certain Operating Agreement, Dated October 15, 1975, between Shell E & P Inc. as Operator and Conoco, Inc., Oryx Energy Co., Chevron USA, Inc., Victor F. Grage, Robert Mosbacher, as Non-operator. | | |
| C-8441 | | | | Operating Agreement, dated April 24, 1951, between Conoco, Inc., as operator and Exxon Company USA, Fina Oil & Chemical Co., and Victor P. Grange as Non-operators. | | |
| C-19290 | | | | Sale, dated November 29, 1977 from Conoco, Inc. to Fina Oil & Chemical Co., and Paramount Petroleum Corp. | | |
| C-008410 A | | | | Purchase, dated November 4, 1974 between Conoco, Inc., as Purchaser and Kirby Petroleum Company, as Seller. | | |

Dkt. 33, Ex. 3, Ex. B. The parties agree that the E. L. McCollum Unit does not contain A-440.

On October 1, 2005, CP leased several properties, including A-440, to plaintiff Chesapeake Exploration, L.L.C ("Chesapeake") under a Paid-Up Oil and Gas Lease ("Chesapeake Lease"). Dkt. 33, Ex. 1. The lease had a primary term of 1 year with a standard habendum clause including an operations requirement that read "this lease shall be valid for a term of one (1) year from this date

2

(called "primary term") and as long as thereafter as oil or gas is produced in paying quantities from the leased premises." *Id.* Then on August 22, 2006, CP and Chesapeake executed an Extension of Paid Up Oil & Gas Lease extending the primary term of the lease through October 1, 2007. Dkt. 33, Ex. 2.

On December 21, 2006, Roy Horne, a landman for Valence, wrote a letter to his counterpart, Kent Crawford, at CP. Dkt. 33, Ex. 6. The import of the letter was to inform CP that pursuant to the 1991 Assignment, Valence had acquired all of CP's ownership interest in A-440. Therefore, Valence stated that the Chesapeake Lease was a cloud on Valence's title to A-440. Valence demanded the following curative actions from CP (1) a Memorandum of Understanding stating that A-440 was subject to the 1975 JOA, and that CP's ownership interests to all properties included in the 1975 JOA had been sold to Valence; (2) production of all documents reflecting a different opinion; and (3) notice to Chesapeake of the cloud on its title under the Chesapeake Lease.

On May 4, 2007, Kent Crawford, CP's landman, replied to Valence and copied Chesapeake. Dkt. 33, Ex. 7. He stated that the Chesapeake Lease "would be effective only as to those rights/depths within the Stayton Survey A-440 that were not assigned to Valence Operating Company by Conoco, Inc by" the 1991 Assignment. *Id.* Since the JOA only covered depths from 8,915 downward—the base of the Upper Wilcox "E" sand—Crawford further stated that "the Chesapeake lease would be effective as to rights from the surface down to . . . 8915 feet." *Id.*

Unsurprisingly, Chesapeake took issue with CP's letter (and therefore Valence's letter) and responded with a letter from Ronnie Brown, Chesapeake's landman. Dkt. 33, Ex. 8. Chesapeake wrote that (1) under the terms of the Chesapeake Lease, there were no depth or mineral reservations, and (2) the 1991 Assignment transferred only properties in the E. L. McCollum Gas Unit of which A-440 was not a part. *Id.* Therefore, Chesapeake continued

3

>    there is no documentation we have found to substantiate your opinion in [your] letter to Valence . . . . Therefore, we find this opinion to be inaccurate and further, we request you rescind said letter or provide an explanation to both parties that remove any doubt as to the facts, as they clear and of record.

*Id.* No response to the letter is contained within the stipulated facts.

On August 8, 2007, Chesapeake filed the instant action against Valence seeking a declaratory judgment that either (1) "the lands covered by the [Chesapeake Lease] are not subject to any oil and gas lease or to the [1975 JOA], or alternatively (2) the 1975 JOA "and any oil and gas lease pursuant thereto be removed as a cloud on Chesapeake's title." Dkt. 1.

On August 29, 2007, Valence filed its answer. Dkt. 7. Valence also counterclaimed against Chesapeake seeking a declaratory judgment and relief based on the torts of tortious interference with contract, and slander of title. The declaratory judgment sought the following findings by the court (1) A-440 was conveyed to Valence under the 1991 Assignment; (2) Chesapeake had actual or constructive knowledge of the 1991 Assignment, the 1975 JOA, and that Valence now owned A-440; (3) the Chesapeake Lease is a wrongful encumbrance and/or cloud on Valence's title to A-440, and that Valence's title to A-440 is superior and free from any rights claimed by Chesapeake; and (4) A-440 is subject to the 1975 JOA which remains in full force and effect as to A-440. Additionally, Valence filed a third-party complaint against CP seeking an identical declaratory judgment as detailed above.

All three parties filed motions for summary judgment. On August 1, 2008 the parties came before the court to argue their respective motions for summary judgment. After hearing argument relating to what interests CP conveyed to Valence, the court ruled on Valence's motion, denying it for the following reasons.

4

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Vill., L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163-64 (5th Cir. 2006). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069,

5

1075 (5th Cir.1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## ANALYSIS

Valence moves for summary judgment asking the court to declare that Valence is the owner of all of CP's interest in A-440 by virtue of the 1991 Assignment. Valence argues that the 1991 Assignment clearly and unambiguously conveyed all properties covered by the 1975 JOA, not just those in the E. L. McCollom Gas Unit. In spite of the configuration of Exhibit B to the 1991 Assignment, Valence contends that the conveyance of the 1975 JOA is not limited by the E. L. McCollum language. In Valence's view, "all" means "all" regardless of the context. Valence further argues that if the court did find the contract to be ambiguous, the "construe against the grantor" and "greatest estate" rules of contract interpretation would still dictate that the entire 1975 JOA was conveyed to it. Both CP and Chesapeake[2] counter that the 1991 Assignment clearly and unambiguously conveyed only those 1975 JOA properties that fall inside the E. L. McCollum Unit. The court agrees.

Whether a contract is ambiguous is a question of law for the court to decide. *R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). Courts generally determine a contract's ambiguity through analysis of the writing alone ("the four corners approach"). *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981); *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 131-32 (Tex. App.—Houston [14th Dist.] 2000, pet dism'd). When analyzing

---

[2] Chesapeake, however, does not pursue this issue, because it contends that its claim as a bona fide purchaser for value without notice applies equally to either CP or Valence.

a writing to determine ambiguity, courts must apply established rules of interpretation. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951).

In interpreting a written agreement, the court's primary purpose is to determine the true intentions of the parties as expressed in the contract or agreement. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Courts should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Universal C.I.T. Credit Corp.*, 243 S.W.2d at 157. No single provision, sentence, or clause taken alone will be given controlling effect. *Coker*, 650 S.W.2d at 393; *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). Contract terms are "to be given their plain, ordinary, and generally accepted meaning" unless the contract shows them "to have been used in a technical or different sense." *Western Reserve Life Ins. Co. v. Meadows*, 261 S.W.2d 554, 564 (Tex. 1953).

After examination of the writing, if the contract's meaning is uncertain and doubtful or is reasonably susceptible to more than one meaning, the contract is considered ambiguous. *Skelly Oil Co. v. Archer*, 356 S.W.2d 774, 778 (Tex. 1961). A court may determine a contract is ambiguous even though the parties do not contend it is. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003); *Hewlett-Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 561 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). If the contract is so worded that it can be given a definite or certain legal meaning or interpretation, the contract is not considered ambiguous. *Coker*, 650 S.W.2d at 393. Conflicting interpretations of a contract and unclear and uncertain language do not necessarily mean a contract is ambiguous. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex.1998); *Cook Composites, Inc.*, 15 S.W.3d at 131; *Hewlett-Packard Co.*, 142 S.W.3d at 561 (an ambiguity does not arise solely because the parties' respective interpretations of

the contract are sharply conflicting). Furthermore, uncertainty or lack of clarity by parties does not suffice to render a contract ambiguous. *Medical Towers v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

Exhibit B of the 1991 Assignment conveys only properties contained within the E. L. McCollum Unit, because to read the conveyance to include the entire 1975 JOA would contradict the pattern established by the contract as a whole, and more importantly, render language in the conveyance of the E. L. McCollum Gas Unit meaningless.

At the top of Exhibit B, the language conveying the E. L. McCollum Unit reads as follows

> All Conoco's right, title and interest in the lease *within the boundaries of the E. L. McCollum Gas Unit*, as to all depths, *whether or not all leases are described herein in this Exhibit "B"*. Said Unit Designation dated December 1, 1975 filed in Volume 892, Page 498 of the Deed Records of Victoria County, Texas including any amendments thereto.

Dkt. 33, Ex. 3 at ex. B (emphasis added). The conveyance indicates that it will list the leases included in the Unit below. And, directly below begins a list of leases, prefaced by lease number and describing the lease. The 1975 JOA is the only lease on that list. The rest of the items are other limiting agreements to which the above property is subject—an operating agreement, a sale, and a purchase. If the 1975 JOA were not a subset of all interests within the boundaries of the E. L. McCollum Unit, then the conveyance would not state that it listed leases below—there are no others listed. Notably, the language "whether or not all leases are described herein in this Exhibit" is not rote as it does not appear on every exhibit conveying property. *See* Dkt. 33, Ex. 3 at ex. E. Therefore, the court declines to read this language, and the language that limits the conveyance to "right, title and interest in the lease within the boundaries of the E. L. McCollum Gas Unit" out of the 1991 Assignment.

Additionally, to read the conveyance of the E. L. McCollum Gas Unit as defining the extent of the conveyance of properties subject to the 1975 JOA would fit the pattern established by all the other exhibits to the Assignment. On each exhibit the conveyances follow the same format. The top of the exhibit's page lists the properties conveyed. Underneath, a box or table lists all of the leases related to the property conveyed above. And, last the table lists those agreements, e.g., operating agreements, sales, purchases, farmout agreements, and unit agreements, to which the property conveyed above is subject. Each exhibit, without exception, conveys gas units and the related agreements that make up those units. Exhibit B is no different. To read Exhibit B as conveying properties subject to the 1975 JOA but not within the boundaries of the E. L. McCollum Unit goes against the pattern clearly established by the 1991 Assignment as a whole. Accordingly, the court finds that the 1991 Assignment unambiguously conveyed on those properties covered by the 1975 JOA that also fell within the boundaries of the E. L. McCollum Gas Unit.

## CONCLUSION

Pending before the court is Valence's motion for partial summary judgment. Upon consideration of the motion, the responses, the reply, the parties' oral argument, and the applicable law, the motion is DENIED.

Signed at Houston, Texas on August 15, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY